The next case today is Roberto Ramos Perea et al. versus Editorial Cultural, Incorporated et al. Appeal number 19-2119 and appeal number 19-2129. Attorney Vargas, please introduce yourself for the record and proceed with your argument. Thank you. Good morning. May it please the court, my name is Luz Editorial Cultural, Inc. With the court's permission, I would like to reserve four minutes for rebuttal. Yes. Thank you. First, I would like to address my remarks specifically to the proof of ownership issue in this case, specifically plaintiff's failure to met their burden to establish a prima facie case of copyright infringement. Plaintiff's standing has been an before trial. As a matter of fact, in this case, this honorable court has two claimants for the same copyrights of the theatrical adaptations of the novels La Llamarada and La Rezaca, both wrote by Enrique Laguerre. At trial, Laguerre's heirs were the only and exclusive claimants of the copyright infringement. Nevertheless, plaintiff's, the Laguerre's heirs, chose not to produce Laguerre's will into evidence and none of the Laguerre's heirs testified as to how they became the legal owners of the copyrights claim. Was it a stipulation that they were the heirs? That's correct, your honor, but our position is that alone does not prove to the jury that they inherit these two specific copyrights. A discord decision in Mota v. Samuel Weiser, the legal owner of the copyright is entitled to institute the copyright infringement committed while he or she is the owner of it. So, important question here, besides all these stipulations that plaintiffs are relying on to conclude that they met their burden, the question remains unanswered and it is, what rights did Laguerre have at the time of his death? So, those heirs... Was there a stipulation that both of these works were in the public domain at the time of his death? That's correct, your honor. The original novels were in the public domain, but the theatrical adaptations not. So, the stipulations that the jury had before them in trial was first the Caribeño contracts, that so-called Caribeño contracts, that were contracts executed by Enrique Laguerre, authorizing Mr. Ramos Perea to create theatrical adaptations of two of his novels, La Llamarada and La Rezaca. Those contracts back to 2001 and 2003. The other stipulation was that Laguerre died in 2005. So, we don't know because there was no evidence provided by plaintiffs. What did Laguerre do with these copyrights that he obtained in 2001 and 2003? So, there is a gap there. Are you stipulating that he reacquired rights by virtue of this contract? Mr. Laguerre. We agreed, for the purposes of this appeal, that through the Caribeño contracts, Laguerre obtained the rights to publish the theatrical adaptations created by Ramos Perea. Counsel, when you obtained a summary judgment against Ramos Perea, did you not obtain that summary judgment by arguing that the only parties entitled to bring this copyright infringement claim were the heirs of Laguerre? Is that not exactly the argument that you made in succeeding on that summary judgment motion? Your Honor, our position at that time was that Laguerre, excuse me, that Ramos Perea did not have the right to publish and he gave that right to Laguerre. Because of the contract that you just described. In those contracts, Laguerre retained the copyright to any copies that would be made of the plays that were written by Ramos Perea. So, obviously, this goes to what I think is a judicial estoppel argument of some force, that you, having made that argument and used it successfully, got a ruling from the judge on that basis. You're now completely flipping here and arguing that no, no, those heirs did not have the right to bring this copyright infringement claim. I find those positions irreconcilable. How do you reconcile them? Your Honor, let me explain myself. There is no question, there was no question in our summary judgment that Laguerre was the one who had the copyrights, okay? But what we are saying now is that there was no evidence that the Laguerre heirs inherit those rights and then they can file and pursue the action of infringement. So, there is no inconsistency in those, in these positions. Because Laguerre, what finally the district court found was that Laguerre, not Ramos Perea, who had their copyrights over that novel, and that is an undisputed fact for this appeal. Our appeal is grounded in the fact that plaintiffs did not prove that they themselves inherit these specific rights at the time of infringement that was in 2013. So, they did not, did not... So, what, by stipulating that they were heirs, what exactly were you stipulating? If it did mean what it seems to suggest, which is that they're heirs. They, they are his heirs, right? But we did not, and the district court in the first of an order granting our rule 50 consistently stated that we never admitted that the heirs inherit these specific rights. So, they were the heirs for purposes of our motion to dismiss for failure to join indispensable parties. Because if, when this case began, there was only one heir claiming the copyrights. So, assuming he had no will, why wouldn't this pass by intestate secession to them? If there was a matter of law. But, Your Honor, I will answer your question. But the first thing we have to know, to note, if at the time of his death he owned the copyrights, then we could determine how these heirs inherit the rights. Because at the time of Laguerre's death in 2005, we have no evidence in the record of what did he own at that time. And Laguerre transfers his rights with, commonly, there is a contract in the exhibits, trial transferring his rights to Editorial Cultural for a theatrical adaptation of La Rezaca in 2002, as I recall well. So, Laguerre used to transfer his rights, his copyrights. So, our point is that there is a missing link between the contracts, 2001 and 2003, until Laguerre's death in 2005. Excuse me, counsel, when you successfully won the summary judgment against Mr. Ramos Perea, the heirs were also plaintiffs in the case, were they not? They were in the case at that point. They were pleading for other two causes of action. You did not argue at that time that they were not properly plaintiffs in the case because they had not established that they had, as heirs, that they now owned the copyright interest. You did not make that argument, did you? No, Your Honor, because at that time they were not claiming these copyrights. They claimed in the first… Why were they plaintiffs in the case? At the beginning, Your Honor, Laguerre's heirs were claiming the first and second cause of action, some accounting and some copyright registration infringement over the original novels. Faced with the dismissal of Ramos Perea, Ramos Perea was the only one claiming the third cause of action that is the controversy before you. So, at that time, the only one claiming the copyrights of the theatrical adaptation was Ramos Perea. When the district court dismissed, then the Laguerre heirs amended and substituted Ramos Perea and claimed the same copyrights he was claiming. That's why we introduced this issue saying that you have before this honorable court two claimants of the same copyright. And that's our point that the is an issue. So, we grounded our appeal in the three facts… Time has expired. May I? Yes. Thank you. In the three facts that plaintiffs are concluding that they met their burden, that the Caribeño contracts in 2001 and 2003, the Laguerre death in 2005, and that they are Laguerre's heirs, but Laguerre's heirs will only inherit whatever rights Laguerre had at the time of his death, and there is no evidence of that. Thank you. Dan? Yes. Thank you, counsel. Thank you, judge. Thank you, counsel. At this time, Attorney Vargas, you can please mute your audio and your video, and Attorney Hernandez, please introduce yourself for the record. Yes. Good afternoon, your honors. I'm Attorney Jose Hernandez Mayoral, representing Roberto Ramos Perea, plaintiff, appellee, and cross-appellant. The reason we have two parties claiming title, I think, is quite clear. Roberto Ramos Perea is the one who filed the complaint for copyright infringement against Cultural for the printing of two of his plays, and it was the district court that concluded, pursuant to Cultural's argument, that it was Laguerre who held those rights and not Ramos Perea. Since the court did not enter judgment at that time, the Laguerre heirs, already plaintiffs in the case, joined in that claim and proved at trial that Laguerre nor they had authorized those printings. But they didn't make the claim at the beginning that they were the owners of those copyrights. That was made strictly by Roberto Ramos Perea. Four facts, four undisputed facts, are determinant of this controversy. First, Roberto Ramos Perea is the author of those theatrical adaptations. Two, they were based on novels written by Enrique Laguerre that were and are in the public domain. Three, Cultural printed 10,000 copies of each of those plays, and four, it did so without Ramos Perea's authorization. As was discussed in the previous argument, what the district court concluded was that under the Caribeño contracts, which is the theatrical production company that was going to stage those theatrical adaptations, Laguerre had represented that he was the absolute owner of the novels, that he was authorizing the staging of his novels through the Ramos Perea adaptations, and he would retain the printing rights. What the court overlooked was that those novels were in the public domain. Under copyright law, once a work enters the public domain, the owner has no further rights over those works. Anyone is free to copy them, and anyone is free to adapt them. That's what Ramos did. Did your client, from the very get-go, did your client make this public domain argument? No, he did not, but he did make... Well, so he was, I gather, relying on the contract that he had entered into on behalf of the theater company, is that correct? That was his reliance at the time that he filed the lawsuit against Editorial Cultural, is that correct? It was, no, he was relying on the fact that he authored the adaptations. I mean, he did it pursuant to the fact that Caribeño was going to stage them. He wasn't a party to that contract, and he made the claim because he was the author, he is the author of those adaptations, Your Honor. And, you know, once it is established, the whole issue of public domain arose during the debate regarding the summary judgment, cross-summary judgment petitions. Once it was stipulated by the parties that those works were in the public domain, those contracts between La Guerra and Caribeño have no legal effect because La Guerra cannot retain rights, he doesn't have, he cannot grant rights, he does not have. So did Ramos work for Caribeño? Was he employed by the theater company? He wasn't. I mean, he was asked to do these adaptations. He wasn't an employee of Caribeño, but there's nothing in the record regarding that. Nothing arose regarding what Ramos Perea's relationship with Caribeño was, which brings me to the other point, Your Honor, Cultural makes a curious twist in his argument by saying that it was Ramos Perea who was granting La Guerra the printing rights and not the other way around. That was not their original argument in summary judgment. That's the argument they make, they made in a suit reply, and they make in their brief. That has several problems. First, it goes against the plain language of a contract. What you see in those contracts is first Ramos Perea claiming to be the absolute owner of the copyrights and La Guerra stating that he is authorizing Ramos Perea to do the theatrical adaptations and keeping the printing rights. Nothing there suggests that it goes the other way around, that it is Ramos Perea who's granting those printing rights to La Guerra. There's a second and perhaps more serious problem to that. Under the Copyright Act, you may only transfer a right through a written instrument of conveyance signed by the author or his authorized agent, but Ramos Perea was not a party to those contracts, so you don't have a written instrument of conveyance wherein Ramos Perea transfers those rights to La Guerra. The fact that these books were in the public domain, when did it come up in the proceeding? Did it come up before you were ruled against? No, no. Yes, it came before. It was briefed to the court, and we argued in our summary what I'm arguing now, that if the underlying works were in the public domain, then La Guerra did not have rights to retain, which is, as was mentioned before, regarding irreconcilable positions. It came up because Cultural was arguing, as to the first two causes of action, that all of their contracts with La Guerra were null and void because they just realized that those works were in the public domain, and therefore there was nothing that La Guerra could grant Cultural, and therefore those contracts were null and void. However, they did not make that argument regarding the Caribeño contracts, nor the contracts from La Guerra to themselves, upon which they claim that La Guerra had been authorized to do those printings, which is one last contradiction here. To Judge Thompson's question, if you accept that La Guerra are the heirs, aren't you accepting that if La Guerra held the copyrights, they inherited those copyrights? Well, their whole defense against the La Guerra heirs was that La Guerra had granted them authorization to do those 2013 printings. So, you know, if you argue that pursuant to a contract signed by La Guerra, you proceeded to make these printouts, then you're recognizing that if La Guerra held those copyrights when he died, the heirs still held those copyrights as 2013. Counsel, there's a suggestion that when your client lost that summary judgment ruling, that he became aligned with the heirs, and they proceeded together in some fashion in pursuing the claim that went to trial. I'm puzzled by it. And then the suggestion is, and now on appeal, they're no longer aligned. Instead, what we have are these competing claims of ownership. Could you explain to me what the posture of your client was after he lost the summary judgment ruling, as the case then moved forward with the heirs pursuing their claim of ownership of the copyright? Yes. Remember that at the start, both the La Guerra heirs and Ramos Perea filed the complaint jointly with multiple causes of action. And this one in particular was only made by Ramos Perea. It was when the district court held that those rights belong to La Guerra and not to him, that the case proceeded, you know, the La Guerra heirs stepped in, if I may finish, joined in that cause of action and proved at trial that they had not authorized cultural. But the La Guerra heirs from the beginning recognized that it was Ramos Perea who had those rights. But since the district court had found otherwise, they proceeded to prove the case that if they held the copyrights, then a cultural still committed copyright infringement because they had not authorized those printings. Thank you. Any other questions? Mr. Hernandez, what if our opinion is that you waived your argument that Calavenya was not your agent, your client's agent, right? How does that affect the copyright ownership issue? Well, first of all, I wouldn't see how it is that Roberto Ramos Perea waived the argument that Calavenya was not his agent. I'm just asking you to assume that, but I understand. Okay. I mean, the basic facts, because of plain language of the contract, doesn't allow the reading or the interpretation that Ramos Perea was granting La Guerra any rights. The contract clearly states, here is Enrique La Guerra, absolute owner of the copyrights. I authorize Ramos Perea to do this and I retain the printing rights. I don't know how you can read that as, or interpret that as having Ramos Perea granting La Guerra rights. That's not what the contract says. Thank you, counsel. Thank you. Thank you. Thank you, sir. At this time, if you would mute your device and yes, Attorney Rivera, please go ahead. Thank you. Good afternoon. May it please the court. If this court, after the novel review, were to uphold the lower court's determination as to Ramos Perea's ownership claim, then the jury verdict in favor of the La Guerra heirs as to the infringement of the theatrical adaptations of La Rezaca and La Llamarada should be sustained. The La Guerra heirs had the ownership of the printing rights to the theatrical adaptations thrust upon them by the lower court in response to Cultural's argument that La Guerra retained those rights to the printing of the dramatical adaptations stemming from the contract between La Guerra and Teatro Caribeño. By the time the lower court made this adjudication as responsible to those arguments, all the heirs were already admitted as such by Cultural as both preceding attorneys have expressed. Cultural raised the issue of indispensable parties, and the will was submitted, the complaint was amended, and Cultural, after seeing the will, admitted that these were the heirs of La Guerra. So, since an admitted fact requires no additional proof in the evolution of this case, that was already said. So, if you have these identified and recognized as the heirs of La Guerra, and if you have the judicial adjudication that took place basically stating that the rights to the theatrical adaptations belong to La Guerra, and if you recognize also, and this is a matter of law, that copyright, U.S. copyright law allows for copyrights to be transferred by will, by operation of law, whichever you want, then you have an adequate ownership track sufficient enough to sustain a copyright infringement action, and that is what happened here. Furthermore, under the continuity presumption, which clearly establishes that things remain the same unless and until some proof of alteration is brought forth, then Cultural, if it really wanted to question the heir's ownership or transfer of with evidence to that, the only evidence they have always brought forth has been speculations and rhetorical questions, and the issue that there's one set of copyrights and two parties are competing for those rights. So, basically... So, did Mr. La Guerra die in test state? No, he died, he died, he had a will, and that will was submitted and presented to the court when the amendment to the complaint was filed. And what does the will say about these works? It does not specify to the works, it just specifies that all, that these are his heirs and all his belongings or his property would be transferred to them in a general manner, and basically that's... And what is it, in your opinion, creates the property interest since they had gone into the public domain? Well, the works had come into the public domain and we are proceeding from the judges' adjudication, the lower court's adjudication, that La Guerra had retained those rights to the printing of the theoretical adaptations. We take it up from them. We do not specify that the La Guerra heirs originally had those rights because the La Guerra original works were in the public domain and these works, theoretical adaptations, had been written by Ramos Perea. So, you and Ramos Perea, you've been aligned, but now you have competing claims, right? Your public domain, your theory is, no, no, La Guerra had the right to do what he did in those contracts, I guess, 2001 and 2003, to make clear that he was retaining the copyright interest in any copies that might be made of the plays that Ramos Perea wrote. So, your positions are quite irreconcilable now. Is that correct? At this moment, the positions seem to be reconcilable because as I mentioned, the ownership was thrust to the La Guerra heirs, but the La Guerra heirs and Mr. Ramos Perea have both been consulted and both are aware that the real ownership to the theoretical adaptations belongs to Ramos Perea and they would accept this court's reverse undetermination to that effect. Is there any reason Ramos Perea cannot rely, from your perspective, you have these competing claims, is there any reason that he cannot rely on his public domain argument, given the history of the case and its present procedural posture? What is your argument against his claim? I have no arguments against his claim. He presented those claims and actually when the parties were presenting the motions for summary judgment, the La Guerra heirs coincided and supported Ramos Perea's ownership claims at that moment. So, internally, they have both acquiesced and accepted that and they have behaved that the lower court was wrong in that interpretation and the La Guerra heirs have no further interest in those theoretical adaptations from Ramos Perea. But in this case, the only thing that we are for sure is that neither of them, neither the La Guerra heirs nor Ramos Perea authorized the printing of those works at that time. Does the state of the record permit an informed determination on that public domain issue? Is the record such that if we think that Ramos Perea has not in some way waived that claim or has judicially stopped from it, is there anything that would prevent us from deciding that issue on appeal? I mean, that is his argument. Is there any reason we can't decide it? Well, I think that issue was briefed. I don't know if it's in the, I think it might be reflected in the docket but the fact that a work enters a public domain by the mere passage of time because these are works that were put out under the 1909 Copyright Act. So, those automatically enter the public domain at a different moment, at a set moment and it's been stipulated to that effect that those works are in the public domain. So, if the works are in the public domain, Mr. La Guerra had no real copyrights or matter to control any iterative works in them. There's something really odd about this case. Very. To put it mildly, I mean, it seems like the whole trial which is premised on La Guerra having retained rights, the copyright interest in any copies that were made of the plays that Ramos Perea wrote, it all seems like a sideshow. I mean, the only real issue here is whether those novels were in the public domain such that Ramos Perea could create the plays and then have his own copyright interest in the copies of those plays. I mean, that seems to be the issue. Well, Your Honor, I'm sorry. Please, go ahead. Okay, it was a stipulated fact that these works were in the public domain and under copyright, these theoretical adaptations could be considered derivative works. Derivative works respond to the copyright, if done with permission, belong to the original underlying works copyright owner and the new copyright owner, the author's new input in the creation of these works. However, when it's a situation such as here, the work is already in the public domain, then everything that the junior author does to create these derivative works belongs to him and it does belong to him. And as I mentioned when I started my elocution here, it's that if you were to affirm the dismissal of Ramos Perea's ownership, then you should sustain the laguerre rights heirs to these works. We are aware that this has been created by, I think, an erroneous interpretation of the lower court as to ownership and the impact of public domain works in the creation of derivative works. You just said that Ramos would have to coincide with you. Yes, I think Ramos Perea has a better claim to ownership to the theoretical adaptations than the claim to ownership of the theoretical adaptations that was thrust upon the laguerre claimants by Cultural's arguments before the lower court. We should bear in mind that the motion for summary judgments were decided by Judge Delgado and after that, the case was transferred to the magistrate for trial. The law of the case, at the moment it was transferred to the magistrate for trial, was that these rights had been retained by the laguerre and belonged to the heirs. That's why the heirs stepped in and proceeded to send this case to trial. Thank you. Thank you. Thank you, counsel. Attorney Rivera, if you could please mute your audio and your video at this time. Attorney Vargas, you have a four-minute rebuttal. Thank you. After hearing both parties arguing, I have to ask why laguerre heirs pursued this trial because they are acknowledging that there is a blatant conflict of interest here between these two claimants. The question posed by Judge Thompson as to the will, that's precisely one of our grounds that the will was not introducing to evidence. As a matter of fact, Mr. Francisco Vasquez, who was the only witness called by plaintiff, laguerre heir, was the accuser of that will. So that's just information for us to... But why doesn't Mr. Ramos Perea have the ownership rights here? He has a derivative work that was based on original works that were in the public domain. Yeah. First of all, that argument was waived by Ramos Perea. In the motion for summary judgment, Ramos Perea did not argue that argument in the motion. That's why the district court did not address that matter. He just said by his own words that it was irrelevant, the issue of the public domain. That was his words, that it was irrelevant. So we waived it. I answer your question, Your Honor? Was it clear at the time of summary judgment that it was in the public domain? That was a stipulated fact as to the other two causes of actions that was related to the original novel. Yes, the answer is yes. That was a stipulated fact. So are you saying that because Ramos Perea took the position at that time that the fact that the originals were in the public domain were irrelevant, that the judge ruled the way she ruled? The judge did not take into consideration that argument because it was not raised. And as Bladere's heir states in their brief, the arguments that are not developed are waived. So the same applies here. He did not raise that argument. And in another question, I think that was Judge Lippes that mentioned the situation when the Ramos Perea cause of action was dismissed. What he did, he crossed arms and he led Bladere's heirs to step into his shoes, not as a co-claimant, but as the real party in interest, claiming these rights. And our position is that when he permitted that to his counsel to do this, he waived the argument on appeal. And I have to note that Attorney Sister Counsel Rivera was also the attorney for Bladere's heirs at trial. So now Bladere's heirs that are conceding that Ramos Perea is the one with the rights were pursuing Bladere's heirs claim and took us to a three-day trial and a jury saying that they were the exclusive owners through the laws of inheritance. So that's the conflict that we in our brief address so many times. And to finish, I like to say that the presumptions that Attorney Rivera has mentioned as to being the heirs and being Bladere's the owner of the copyright were not presented to the jury. These are presumptions of law that has to be presented to the jury and that was known. I want to let that clarify. Okay, thank you. Thank you. No more questions? Nothing. Thank you for your time. That concludes argument in this case. Attorney Vargas, Attorney Hernandez, and Attorney Rivera, you should disconnect from the hearing at this time.